# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

| | | |
|---|---|---|
| In re Subpoena of South Broward Hospital District Issued to Self Insured Services Company | : | Case No. 21 mc5 |
| | : | |
| | : | |
| | : | |

## SELF INSURED SERVICES COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO QUASH

Self Insured Services Company ("SISCO"), by and through its counsel, submits the following memorandum of Law in support of its Motion to Quash the subpoena issued by South Broward Hospital District.

1

# TABLE OF CONTENTS

I.  INTRODUCTORY STATEMENT                                              3

II.  VENUE                                                              5

III.  FACTUAL BACKGROUND                                               7

    a.  Movant Self Insured Series Company                            8

    b.  The Subpoena                                                   8

IV.  LEGAL ARGUMENT                                                    10

    a.  Standard of Review                                            10

    b.  The Subpoena Must Be Quashed Because It Does Not Allow
        Reasonable Time to Comply                                     12

    c.  The Subpoena Must Be Quashed Because It Requires Compliance
        Outside of the Geographical Limits of Rule 45(C)              12

    d.  The Subpoena Must be Quashed Because It Requires The Disclosure of
        Privileged and Protected Matters, Including Millions of Data Points of
        Personal Protected Patient Information Protected by the Health Insurance
        Portability and Accountability Act ("HIPAA")                   13

    e.  Compliance With the Subpoena Presents an Undue Burden to Movant
        Because the Material in the Format Demanded Simply Does Not
        Exist and Presents and Unreasonable Security Risk if Assembled 17

    f.  The Subpoena Seeks the Production of Confidential Trade Secrets
        and Business Information                                       18

V.  COSTS                                                             19

VI.  SANCTIONS                                                        20

VII.  CONCLUSION                                                      21

# I.  INTRODUCTORY STATEMENT

This Motion to Quash relates to a putative class action lawsuit filed in the United States District Court for the Southern District of Florida on May 21, 2020.  A copy of the underlying Amended Complaint is attached hereto as "Exhibit A".  The Defendants in that matter are ELAP Services, LLP ("ELAP"), a health cost containment company that offers group health plans a reference based pricing program to reduce health care costs, and Group & Pension Administrators, Inc. ("GPA"), a type of professional services business that is commonly referred to as a third party administrator ("TPA") that provided administrative services to health plans. GPA is hired by self-insured employers, and other self-insured health plans to review, process and pay medical bills on behalf of the plan.  Typically, self-insured plans have a fiduciary obligation to preserve Plan funds in the administration and payment of claims.  Consistent with this fiduciary obligation, health plans retain service providers, such as ELAP, to review and audit medical bills submitted by healthcare providers to the TPA for payment by the health plan involved.  ELAP evaluates hospital bills to determine the fair and reasonable amount of reimbursement for the goods and services actually provided.

The need for self-insured employers and health plans to retain companies such as ELAP to implement reference based pricing programs arose in response to the phenomenon of rampant overbilling by healthcare providers whereby hospitals and other medical providers charge and seek to collect from some patients excessive amounts for goods and services that bear no relationship to the market value of reasonable value.  The phenomenon results in excessive, unconscionable charges that threaten to bankrupt individuals and health plans.

The plaintiff in the underlying action is a hospital system located in Miami Florida that seeks to shut down employers' and self-insured health plans' access to essential information about

3

the fair and reasonable amount that should be charged for a particular medical procedure by seeking to attack those involved in the auditing process. In this case, plaintiff South Broward Hospital District, d/b/a Memorial Healthcare System ("South Broward"), alleges ELAP and GPA deceived South Broward into providing health care to patients by indicating the patients' plans would pay a higher reimbursement rate than they ultimately paid; however, in the only transaction identified in the pleadings, ELAP and GPA established through uncontroverted, unequivocal evidence that they told South Broward *exactly* the rate of reimbursement that would be paid. *See South Broward Hospital District v. ELAP & GPA*, No. 0:20-cv-61007, at ECF 16-6 & 16-7 (S.D. Fla). Although South Broward has asserted putative class action claims for violations of Florida's Unfair and Deceptive Trade Practices Act ("FDUTPA") and unjust enrichment, the Southern District of Florida has not certified any class in the case.[1]

On August 31, 2021, Respondent served the subject subpoena upon Self Insured Services, Co. (hereinafter "Sisco" and/or "Movant"), a non-party to the class action, seeking production of an extremely broad range of information, in a format in which the data does not exist, and which seeks to reveal extremely private, confidential, and statutorily-protected personal information and personal health information of thousands of individuals from Iowa and other locations across the

---

[1] It is important to understand that the Plaintiff has the legal right and ability to seek to collect a fair and reasonable price for medical services rendered, yet it does not seek to support that any of its apparently adversely audited bills were fair and reasonable: rather it seeks to abolish the practice of auditing altogether. Further, although the claims audit and payment process involves a unique set of codes, services and treatments for each patient, and invariably involves medical bills of vastly different magnitude and complexity, Respondent alleges that its cause of action is so representative of the harms faced by all healthcare providers nationally that a class action lawsuit is the appropriate vehicle for redress. In order to establish a viable class action, Respondent would have to satisfy the five-fold requirements of: (1) numerosity, (2) commonality, (3) typicality, (4) adequacy, and (5) ascertainability." See Vision Power, LLC v. Midnight Express Power Boats, Inc., 2020 WL 808284, at *2 (S.D. Fla. Feb. 18, 2020). Respondent has not yet moved for class certification.

country who have no connection whatsoever to any hospital in Miami, or even any medical provider in the state of Florida.

A copy of the Subpoena Served upon non-party Sisco is attached hereto as "Exhibit B." A quick review of the subpoena reflects that it is vastly overbroad in its scope and in its attempt to access the personal and private medical information of thousands of strangers to the subject action. Because the information sought in the subpoena is overly broad, contains confidential health information for thousands of patients, would disclose Movants' confidential business information and trade secrets, presents an egregious burden of compliance to a non-party, is not reasonably calculated to lead to the discovery of admissible evidence in the underlying Florida lawsuit, and it primarily serves solely as a means of harassment, Movant objects and seeks an Order from the Court quashing the subpoena. Further, because parties serving the subpoena made no attempt whatsoever to limit the scope of their request, plaintiff's counsel must be sanctioned to compensate (the plan) for the legal fees and expense incurred in filing the within Motion to Quash.

## II.    <u>VENUE</u>

Rule 45 of the Federal Rules of Civil Procedure requires that a Motion to Quash and non-party subpoena must be filed in "the court for the district where compliance is required." Rule 45((d)(3)(A)). Further, pursuant to Rule 45, the "place of compliance" for a non-party subpoena for "documents, electronically stored information and tangible things" is "a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." The Advisory Committee Notes to the 2013 Amendments to Rule 45 make clear that the goal is "**to protect local non-parties, local resolution of disputes about subpoenas is assured** by the limitations of Rule 45(c) and the requirements in Rules 45(d) and (e) that motions be made in the court in which compliance is required under Rule 45(c)." <u>In re Outlaw Labs, LP Litig</u>, 2020 U.S. Dist LEXIS

175558; 2020 WL 5709386 (citing rule 45 advisory notes) (emphasis added). Here, the moving party's principle place of business is 800 Main Street, Dubuque, Iowa. This is the same as the address set forth in the subpoena. Therefore, pursuant to Rule 45, the proper venue for filing this Motion to Quash is in the District Court for the Northern District of Iowa in Cedar Rapids.

As prepared, the Subpoena is defective on its face because the location where it commands production is in Miami, Florida. It is important to note that the "place of compliance" for the purpose of determining the proper venue for a motion to quash is NOT determined by the location selected by counsel and listed on the subpoena. For non-party subpoenas issued pursuant to Rule 45, the "court where compliance is required" is the district court where the subpoenaed party is headquartered or has a consistent physical presence. See Agincourt Gaming, LLC v. Zynga, Inc., 2014 U.S. Dist. LEXIS 114348, *1, 2014 WL 4079555 ("Rule 45 makes clear that the place of compliance is tethered to the location of the subpoenaed person."). Addressing a similar situation, the court in Europlay Capital Advisors, LLC v. Does, addressed a subpoena directed to Google seeking compliance more than one hundred (100) miles from Google's headquarters or geographically connected locations. In denying a motion to compel, the court stated:

> "Under the federal rules, as amended in 2013, 'a subpoena must be issued by the court where the underlying action is pending, but challenges to the subpoena are to be heard by the district court encompassing the place where compliance with the subpoena is required.' Woods ex rel. U.S. v. SouthernCare, Inc., 303 F.R.D. 405, 406 (N.D. Ala. 2014) (citing Fed. R. Civ. P. 45(a)(2), (d)(3)(A)). Rule 45 further requires that the place of compliance for the "production of documents, electronically stored information, or tangible things [is] at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(2)(A). Here, the Court finds that district is the Northern District of California because it is within 100 miles of where (1) Google is headquartered; (2) Google's custodians of records reside, are employed, and regularly transact business in person; and (3) Google's custodians produced records in response to the Subpoena. (Lee Decl. ¶ 7 & Ex. A). Thus, this Court has no jurisdiction over Plaintiffs' motion to compel."

6

<u>Europlay Capital Advisors, LLC v. Does</u>, 323 F.R.D. 628, 629, 2018 U.S. Dist. LEXIS 35855, *2-3, 2018 WL 1114341.

A party to litigation issuing a subpoena cannot artfully compel a non-party to submit to a remote and inconvenient venue in order to protect its interests when faced with objectionable discovery requests by merely designating a geographic location of its choice. In the case <u>In re Outlaw Labs, LP Litig</u>, 2020 U.S. Dist LEXIS 175558; 2020 WL 5709386, a party to litigation issued a subpoena to a non-party directing compliance at a location more than one hundred (100) miles from any locale proximately connected to the recipient of the subpoena. A third party defendant in that matter timely filed a motion to quash the subpoena in the federal district court sitting in the location of the place of production specified in the subpoena. After reviewing the subpoena the District Court determined that it did not have jurisdiction to rule on the motion. The court stated, "Rule 45 consistently, through numerous sections of the Rule, requires any motions or applications related to a subpoena be brought in the district where compliance is required. Rule 45(d)(1) (As to avoiding undue burden or expense on the party subject to the subpoena, "[t]he court for the district where compliance is required must enforce this duty")" *See* <u>In re Outlaw Labs., LP Litig.</u>, 2020 U.S. Dist. LEXIS 175558, *6, 2020 WL 5709386.

Consistent with the requirements or Rule 45 and the express intention of the advisory committee to allow non-parties to challenge a subpoena in their local court, this motion to quash is properly venued in the federal district court in Cedar Rapids, Iowa.

## III.   **FACTUAL BACKGROUND**

ELAP, one of the defendants in the underlying class action lawsuit, contracts exclusively with self-insured and employer-funded medical plans to audit medical bills so that the plans do not erroneously pay an inappropriate or exorbitant sum for medical treatment rendered. Movant is a

7

third-party administrator ("TPA") for self-insured medical plans.   It is assumed that Movant was served with a subpoena because some of its customer plans use ELAP's services to audit some of their medical bills.  The subpoena, as set forth in greater detail below, is an overly broad, improper, and highly objectionable attempt to mine the private, privileged and statutorily protected data acquired by Movant over the course of a six (6) year period.   The relevance of the requested information is unknown to Movant and not apparent from the request, particularly since the claims handled by Movant would NOT also be handled by GPA, a defendant in the underlying action. Moreover, the vast majority of claims that would be covered in the sweeping request have no connection to the Plaintiff Hospital System, or even to the State of Florida.  (See the Affidavit of Sisco, attached hereto as Exhibit "C").

### a.  Movant Self Insured Services Company

Movant, Self Insured Services Company, is a third party medical claims administrator located at 800 Main Street, Dubuque, Iowa. (Harper Affidavit, ¶ 2).   It administers approximately 600,000 claims per month, ensuring healthcare providers' payment for medical services provided are timely rendered.  Harper Affidavit at ¶ 5. Less than 10% of Sisco's claims pertain to medical services provided in the state of Florida, and less than 1% of said claims pertain to South Broward Hospital District, the Plaintiff in this matter. Harper Affidavit at ¶ 7.

The Subpoena seeks all information contained in the claim or transaction forms UB-04, EDI 835, EDI 837 without limitation, relating to thousands (tens of thousands) of claims and transactions occurring from 2016 to the present.  The UB-04 is the form routinely used to capture all of a patient's relevant information, including personal biographical information, relevant medical conditions, injuries, illnesses, and treatments provided. The EDI 835 and EDI 837 transactions are the format mandated by HIPPA to process payment of healthcare claims.

These forms are each contain sensitive personal information and personal health information ("PHI") as defined in HIPAA including, but not limited to names, addresses, social security numbers, dates and times of medical appointments, medical conditions treated, and medical diagnoses. Harper Affidavit at ¶ 15. In addition to providing extensive HIPPA training to Sisco's employees handling said information, Sisco maintains procedures and safeguards to ensure that the information and data contained within each UB-04 and each EDI 835 and EDI 837 transaction is safeguarded and not stored in such a fashion that it could be easily combined, commingled or otherwise reduced to a report form or singular file as requested by plaintiff's subpoena. Harper Affidavit at ¶¶ 14,17.

Each billing and payment event is treated as a separate and discrete transaction in order to protect confidentiality. Harper Affidavit at ¶ 17. As such, Sisco does not maintain a collective report of all claims processed and each UB-04,EDI 835 and EDI 837 form is handled in a discrete fashion. Id.

**b. The Subpoena**

The subpoena broadly seeks that the defendant compile a report in "an Excel spreadsheet and CSV file" of every data point on all UB-04s (claim forms prepared by hospitals) EDI 837s (electronic claim files) and EDI 835s (electronic remittance advices) for individuals covered by self-funded health plans that have contracted with ELAP for a nearly six (6) year period from January 1, 2016 through the present (*See* Exhibit "A"). Specifically, the subpoena contains the following definitions:

10. *The term "Claim" or "Claims" means claims for healthcare services provided to Members.*

11. *The term "Report" or "Reports" means an Excel spreadsheet and CSV file.*

12.     *The term "Members" means individuals insured by or entitled to receive benefits from Clients.*

13.     *The term "Client" or "Clients" means the self-funded health plans that have directly or indirectly engaged or retained ELAP.*

23.     *Unless otherwise specified, the time from (sic) for these requests is from January 1, 2016 to the present.*

It is important to note that the request as written is far broader than claims audited by ELAP, because many plans retain ELAP to audit some claims but not all of their medical claims, yet the request as written would apply to all claims of any plans that also uses ELAP as an auditor, regardless of whether the particular claim itself was audited by ELAP. Among the millions of confidential data points included in the Plaintiff's request, none would be connected to defendant GPA and many would also have no nexus to defendant ELAP, and less than 1%, if any at all, would have a connection to the Plaintiff.

As stated in the affidavit of Movant, Movant does not maintain a comprehensive report in any format of all information contained in any of the claims that it processes, nor does it store the information in a manner which permits for mass data extraction or commingling of information from multiple claims.

## IV.   <u>LEGAL ARGUMENT</u>

### a.   <u>Standard of Review</u>

Rule 45(d)(3)(A) of the Federal Rules of Civil Procedure provides:

On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
- (i)     fails to allow reasonable time to comply;
- (ii)     requires a person to comply beyond the geographical limits specified in Rule 45(c);
- (iii)     requires disclosure of privilege or other protected matter, if no exception or waiver applies; or
- (iv)     subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A). If any one of the above factors applies, the Rule is mandatory that the subpoena must be quashed on modified. With the subpoena currently at issue each of the four mandatory factors for quashing a subpoena applies, and each will be discussed in separate sections B through E below. In addition, pursuant to Rule 45(d)(3)(B), a court is permitted to quash or modify a subpoena where the subpoena requires "(i) disclosing a trade secret or other confidential research, development or commercial information." On this basis, the subject subpoena should also be quashed as discussed further in section F below.

"The party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." Night Hawk Ltd. v. Briarpatch Ltd., 03 Civ. 1382, 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003); see also Salvatorie Studios, Int'l v. Mako's, Inc., 01 Civ. 4430, 2001 WL 913945, at *1 (S.D.N.Y. Aug. 14, 2001). If relevance is established, the party seeking to quash a subpoena bears the burden of demonstrating that the subpoena "is over-broad, duplicative, or unduly burdensome." Kingsway Fin. Servs., Inc. v. Pricewaterhouse–Coopers LLP, 2008 WL 4452134, at *4 (S.D.N.Y. Oct. 2, 2008) see John Wiley & Sons, Inc. v. Doe Nos. 1–30, 284 F.R.D. 185, 189 (S.D.N.Y.2012) (citing Pegoraro v. Marrero, No. 10 Civ. 0051, 2012 WL 1948887, at *4 (S.D.N.Y. May 29, 2012)); Ford Motor Credit Co. v. Meehan, No. CV 05–4807, 2008 WL 2746373, at *5 (E.D.N.Y. July 11, 2008) (citing Sea Tow Int'l, Inc. v. Pontin, 246 F.R.D. 421, 424 (E.D.N.Y.2007)).

### b.  The Subpoena Must Be Quashed Because It Does Not Allow Reasonable Time to Comply

The Subpoena was served upon Movant on August 31, 2021.  It requires Movant to respond with a "report" "in Excel or CSV format" in less than one month, by September 27, 2021.  Such a Report does not exist and cannot be compiled in less than a month, if it could be compiled at all. Harper Affidavit ¶¶ 11-17.  Moreover, if such a report could be assembled, the task of stripping out all personal and confidential information of the patients and their insured family members, such as social security numbers, addresses, and medical treatment codes, as would be required to do by the laws and statues discussed more fully below, would be a very long and expensive endeavor.   Should this Court require more precise information about how long it might take to build the requested reports, Movant would respectfully request leave a court to allow sufficient time to retain an expert to determine the full scope of the task.

### c.  The Subpoena Must Be Quashed Because It Requires Compliance Outside of the Geographical Limits of Rule 45(C)

Rule 45(c)(2)(A) requires that a subpoena may command "production of documents, electronically stored information, or other tangible things as a place within 100 miles of where the person resides is employed or regularly transacts business in person."  It is undisputed that, as stated in the subpoena, Movant's place of business is in Dubuque, Iowa, and its headquarters is in Davenport Iowa.  Harper Affidavi at ¶¶2-3.   In preparing the subpoena plaintiff's counsel totally ignored the rule and commands that the requested documents be produced at in Miami Florida at the office of the Plaintiff's law firm.  It is undisputed that Miami Florida is more than 100 miles away from Iowa.   Therefore, the subpoena must be quashed for failure to comply with the geographical limitations set forth in Rule 45(c)(2)(A).

**d. The Subpoena Must be Quashed Because It Requires The Disclosure of Privileged and Protected Matters, Including Millions of Data Points of Revealing Protected Health Information Protected by the Health Insurance Portability and Accountability Act ("HIPAA")**

The scope of the plaintiff's request for the personal protected information of non-party businesses and individuals is inordinate and cannot be understated. In plain and personal terms, a hospital located in Miami is seeking the production information that would include, as hypothetical illustration: Mrs. Jane Smith's street address in Cedar Rapids Iowa, her social security number, the name of her employer, the name of her spouse, the names of her children, whether she is single or married, and the dates, time and nature of every single medical treatment and diagnosis that she has had from 2016 to the present, regardless of how very personal or private that diagnosis or treatment might be. Keeping in mind that Jane Smith lives and Iowa and has no connection to any hospital in Miami or anywhere else in Florida, we must then multiply this personal request across thousands of Jane Smiths and Joe Smiths and children Smiths, living throughout the state of Iowa and across most of the rest of the country, and pile all of that information into a report to send to a law firm in Miami. This request truly shocks the conscience. How could Movant Sisco even begin to explain to any of these thousands of people or to their health plans why their most personal information is being shipped off to unknown people in Miami to be used for unknown reasons having no benefit whatsoever to them?

The very nature of the request reflects a recklessness on the part of the Plaintiff hospital and its attorneys. No organization should want to hold such a vast array of personal information of citizens in a bundled, static and easily searchable condition as requested here. The reports requested would constitute nothing short of the privacy equivalent of storing a barrel of live gunpowder at the firm. The scope of this request from private information does not appear to have been made by persons who understand either the security risk involved, the security measures that

13

would need to be put in place to hold the requested data, or even the insurance coverage that would need to be in place to cover the firm in the event of a breach. At a bare minimum, before any court would permit the disclosure of such information, it should inquire as to the receiving party's ability to keep it secure, protect against breach and provide compensation in the event of a negligent breach.

As defined under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), protected health information is individually identifiable health information maintained or transmitted by a covered entity or business associate. 45 C.F.R § 160.103. Individually identifiable health information is defined as:

> information that is a subset of health information, including demographic information collected from an individual, and: 1) is created or received by a health care provider, health plan, employer, or health care clearinghouse; and 2) relates to the past, present or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present or future payment for the provision of health care to an individual; and (i) that identifies the individual; or (ii) with respect to which there is a reasonable basis to believe the information can be used to identify the individual.

*Id.* As such, under this definition, individually identifiable health information would also include identifiers such as name, address, date of birth, and Social Security number. The information sought, pursuant to this subpoena, is unequivocally and undeniably protected health information pursuant to HIPAA that the United States Congress has gone to great lengths to protect. Thanks to HIPAA and the forms that it requires, it is the expectation of virtually every citizen in the United States that their personal health information will affirmatively be protected from disclosure by the persons and businesses involved in their care. In this Subpoena, the plaintiff seeks to completely erase that protection.

"Courts are hesitant to permit the discovery of medical records of non-parties." Pinder v. Express Care of Belleview, LLC, 2013 U.S. Dist. LEXIS 163689, *3 (M.D. Fla. November 15,

2013) *citing* <u>Kapp v. Jewish Hospital, Inc.</u>, 2011 U.S. Dist. LEXIS 73143 (S.D. Ohio July 7, 2011) (disclosure of non-party patient medical records not permitted); <u>Coulter v. Murrell</u>, 2011 U.S. Dist. LEXIS 14922, *7 (S.D. Cal. February 14, 2011) (motion to quash and sanctions granted regarding request to produce non-party medical records); <u>Muderis v. Hernandez</u>, 2021 U.S. Dist. LEXIS 6343, *11 (D. Colo. January 13, 2021) ("medical records contain highly sensitive and private information that does not necessarily need to be disclosed to foster the effective functioning of the adversarial system"); <u>(G.D. v. Monarch Plastic Surgery, P.A.</u>, 2007 U.S. Dist. LEXIS 5647, **16-18 (D. Kan., January 24, 2007) (court unwilling to enter an order for the production of non-party patients medical records, stored on a computer database). Furthermore, the federal district courts have indicated that "non-parties deserve extra protection from the courts." <u>Coulter v. Murrell</u>, 2011 U.S. Dist. LEXIS 14922, *7 (S.D. Cal. February 14, 2011) citing <u>High Tech Medical Instrumentation, Inc. v. New Image Industries</u>, Inc., 161 F.R.D. 86, 88 (N.D. Cal. 1995).

In <u>Kapp v. Jewish Hospital</u>, supra, Plaintiff sought access to non-party patient medical records in an attempt to determine if other nurses, similar to Plaintiff, had disregarded an order not to administer a diabetic medication to patients. 2011 U.S. Dist. LEXIS 73143, *1-2 (S.D. Ohio July 7, 2011). In reviewing a denial of a motion to compel, by the Magistrate Judge, the court noted that:

> Hospital patients expect their records remain confidential, such patient expectations are not only reasonable, but are the law. The need for a fair trial and the need for confidentiality in medical records are both important interests to protect. In fact, it is widely recognized that individuals should be encouraged to seek treatment for medical or psychological conditions, and privacy is often essential to effective treatment. Maintaining confidentiality with respect to medical treatment is a significant interest and if the right to confidentiality is to mean anything, an individual must be able to direct the disclosure of his or her own private information. [internal citations omitted] <u>Id.</u> at *7.

15

The Court further noted that although it may be more efficient for the party to be permitted to obtain non-party patient medical records in order to determine if other nurses, similar to Plaintiff, had disregarded an order not to administer a diabetic medication, the party's interests, however, **do not outweigh the rights to confidentiality of the non-party patients**. Id. at *8, *14 (emphasis added).

Even those rare case where medical information relating to a non-party has been permitted by the court are instructive by their contrast to the current subpoena at issue. For example in Bennett v. Fieser, the court permitted the production of a just one non-party patient medical records, in a medical malpractice action, and only on the condition that the patient's name and all other identifying information must be deleted from the records. 1994 U.S. Dist. LEXIS 4068, *8 (D. Kan., January 28, 1994). The parties were also ordered to make no effort to learn the identity of the patient. *Id.* In contrast, the subpoena here contains no such safeguards, rather the subpoena demands the personal, confidential, and sensitive health information pertaining to thousands of non-party patients, who have no connection whatsoever to Respondent or to the State of Florida.

To date, the moving party has not found a single precedent in any state or federal court that requires or permits a non-party to produce the personal information of thousands of other non-party individuals and their health plans. Simply because this information is sought, pursuant to litigation, does not outweigh the rights to confidentiality of those non-party patients. As such, the subpoena improperly seeks confidential protected health information of non-party patients. HIPAA explicitly bars the production of same, for the reason that patient confidentiality is a significant interest and patients must be able to direct the disclosure of their own information. Rule 45 plainly seeks to protect non-parties from disclosure or privileged and protected matters. It must be enforced here to quash the plaintiff's subpoena and to protect the personal information of

thousands of individuals located in Iowa and elsewhere throughout the country. Accordingly, the subpoena must be quashed in its entirety.

### e. Compliance With the Subpoena Presents an Undue Burden to Movant Because the Material in the Format Demanded Simply Does Not Exist and Presents and Unreasonable Security Risk if Assembled

"Whether a subpoena imposes upon a witness an 'undue burden' depends upon 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 49 (S.D.N.Y 1996); citing United States v. International Bus. Mach. Corp., 83 F.R.D. 97, 104 (S.D.N.Y. 1979). "In addition, the status of a witness as a non-party to the underlying litigation 'entitles [the witness] to consideration regarding expense and inconvenience.'" Id.; citing Fed.R.Civ.P. 45(c)(2)(B) ("an order to compel production shall protect any person who is not a party from significant expense. . . .").

The reports sought do not exist. Harper Affidavit at ¶ 14. Movant does not maintain a collective report of all claims it processes. Id. Nor does Movant retain all UB-04s, EDI 835s and EDI 837s that it acquires. Id. The primary rationale behind both those facts is explained above: that the highly sensitive nature of the personal health information contained within those documents must be vigorously protected. To maintain such information in digital form indefinitely and to store it is a unified or easily assembled, searchable and readily accessible format is both unnecessary to Sisco's business and creates an unnecessary data security risk. If the documents do not exist in the format requested, non-party Sisco cannot be compelled to produce such a document.

Even if the documents were in Movant Sisco's possession, the breadth of the document requests is incredibly massive. Respondent seeks PHI from many thousands of individuals. *Id.* at ¶ 8-10. Pursuant to HIPAA requirements, Sisco would be required to do additional work to strip out most information, to the extent that it constitutes private information of individuals. The temporal scope of the request is also lengthy, as Respondent seeks six (6) years of such records. Without a substantial investment of time, Movant is not able to accurately quantify the number of claims encompassed by the requests in the subpoena, but given the number of individuals who file claims per month is 600,000, it is conservatively estimated that the number of claims is in the 7.2 million a year, which would come to approximately 43.2 million for a six year period. That alone demonstrates the incredible breadth of the requests and the wholly undue burden on Movant to produce the documents, even if they did exist.

### f. The Subpoena Seeks the Production of Confidential Trade Secrets and Business Information

The subpoena seeks the production of confidential business information and trade secrets, specifically, Movant's customer lists and details about the size and location of Movant's customers. Such confidential business information is routinely protected from disclosure, particularly when it is sought from non-parties:

> "Courts …… have been keenly sensitive to the burden imposed upon a non-party witness who may be subject to irreparable harm and prejudice for exposing its proprietary information." Jack Frost Lab., Inc. v. Physicians & Nurse Mfg. Corp., 1994 U.S. Dist. LEXIS 261, 1994 WL 9690, at *2 (S.D.N.Y. Jan. 13, 1994) (citing Haworth Inc. v. Herman Miller Inc., 998 F.2d 975, 978 (Fed. Cir. 1993)); see also Arista Records LLC v. Lime Group LLC, 2011 U.S. Dist. LEXIS 20709, 2011 WL 781198, at *2 (Mar. 4, 2011) ("[W]here, as here, discovery is sought from a non-party, the Court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on the non-party.") And where a subpoena may have little or no relevance to the claims and defenses in a particular action, while having the potential of disclosing confidential or proprietary information that could create a contemporary and possibly an uncompromising competitive business edge over others, a court should consider

quashing the subpoena. Solow v. Conseco, Inc., 2008 U.S. Dist. LEXIS 4277, 2008 WL 190340, at *5 (S.D.N.Y. Jan. 18, 2008); Jones v. McMahon, 2007 U.S. Dist. LEXIS 50145, 2007 WL 2027910, at *16 (N.D.N.Y. July 11, 2007) (quoting In re Candor Diamond Corp., 26 B.R. 847, 849 (S.D.N.Y. 1983) for the proposition that "[r]estrictions on discovery may be broader where a non-party is the target of discovery to protect such third parties from unnecessary harassment, inconvenience, expense or disclosure of confidential information").

Banner Indus. of N.E. v. Kenneth L. Wicks & Harrington Indus. Plastics LLC, 2013 U.S. Dist. LEXIS 150559, *24-25, 2013 WL 5722812 (Northern District of New York).

Movant protects its customer lists and the locations and sizes of its health plan customers from disclosure, because if such knowledge or information were to be readily accessible by others it could allow for other third party administrators to gain competitive information and cause irreparable harm to Movant's business. Harper Affidavit at ¶19, Further, since only of 10% of claims relate to the state of Florida, it is not in any way apparent that the information sought is of any significant relevance in the case. The Motion to Quash should therefore be granted because it allows for the production of Movant's customer list and other confidential business information.

## V.    COSTS

If this court were to choose to entertain further consideration of requiring the creation of some type of report within a particular set of parameters, then Movant would request leave of court to allow time to retain an expert at the plaintiff's expense to fully evaluate the logistics, time and expense involved. As a non-party, Movant is entitled to consideration regarding expense and inconvenience. Concord Boat Corp., 169 F.R.D. at 49; citing Fed.R.Civ.P. 45(c)(2)(B). The unduly burdensome nature of the subpoena issued by Respondent therefore necessitates that the Motion to Quash be granted.

## VI.   SANCTIONS

Federal Rule of Civil Procedure 26(g) mandates the signature and certification of discovery requests by a party.  In relevant part, the Rule states that:

> (1) *Signature Required; Effect of Signature*.  Every … discovery request, response or objection must be signed by at least one attorney of record … .  By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:
>
> …
>
> (b) with respect to a discovery request, response, or objection, it is:
>
> …
>
> (ii)    not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and
>
> (iii)    neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.
>
> …
>
> (3) *Sanction for Improper Certification*.  If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both.  The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

"Rule 26(g) was enacted 'to eliminate one of the most prevalent of all discovery abuses: kneejerk discovery requests served without consideration of cost or burden to the responding party.'" Heller v. City of Dall., 303 F.R.D. 466, 477 (N.D. Tex. 2014); citing Mancia v. Mayflower Textile Services. Co., 253 F.R.D. 354, 358 (D. Md. 2008).  The subpoena served by the plaintiff herein plainly reflects that plaintiff's counsel made no attempt whatsoever to tailor its subpoena so as to avoid seeking the private confidential and protected information of health plans, employers, businesses and thousands of persons that have no connection whatsoever to the plaintiff.  Further the subpoena shows a complete lack of consideration or regard for the burden imposed upon the subpoenaed party.

The subpoena was also very likely served with an improper purpose, specifically to harass ELAP, a defendant in the matter by sending out alarming subpoenas with unreasonable requests to numerous third party administrators and others who use ELAP's auditing services. In short, the subpoena is clearly in violation of the requirements of F.R.C.P. 26(g)(1)(B)(ii) and (iii) relating to certification of the good faith nature of the document requests. Accordingly, sanctions should be imposed for these violations, pursuant to F.R.C.P. 26(g)(3). Movant requests that Respondent be sanctioned $10,000.00 for these violations.

## CONCLUSION

For all of the foregoing reasons, it is respectfully submitted that the Subpoena issued to Self Insured Services Company in the matter of South Broward Hospital District v. ELAP Services LLC and Group and Pension Administrators must be quashed and sanctions awarded in the amount to be determined by the Court to cover Self Insured Services Company's fees and expenses incurred in filing the instant motion.

SIMMONS PERRINE MOYER BERGMAN PLC

By _____
Thomas D. Wolle  AT0008564
115 3rd St. SE, Suite 1200
Cedar Rapids IA 52401
Telephone: 319-366-7641
Facsimile: 319-366-1917
Email: twolle@spmblaw.com